UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| REGINA ALLENE HOSEY | ) | |
| | ) | |
| V. | ) | NO. 2:12-CV-21 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

### REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's claim for Supplemental Security Income was denied after an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and defendant Commissioner have filed Motions for Summary Judgment [Docs. 10 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence.

*Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 42 years of age with a high school education at the time of the ALJ's adverse decision. There is no dispute that she cannot perform any of her past relevant work. She alleges severe impairments of degenerative disc disease, degenerative joint disease, arm problems, diabetes, heart problems and fatigue from difficulty sleeping. The ALJ found that her degenerative disc disease and degenerative joint disease constitute severe impairments, but did not find that her other alleged impairments are severe. Plaintiff does not contest this finding and further arguments regarding any of them are waived.

Plaintiff's medical history is summarized in her brief as follows:

> Dr. Timothy G. McGarry examined Plaintiff on September 28, 2009, due to bilateral knee complaints and right ankle pain with history of ankle fracture. Evaluation of Plaintiff's gait revealed an appreciable limp and x-rays were noted to show a mild decrease in the joint space of both knees and some minimal ankle calcaneal spurs. The assessment was bilateral knee pain and right ankle pain. As Plaintiff was a cash pay patient, Dr. McGarry prescribed Relafen and gave her some exercises and stretching to do (Tr. 205-206).
> Plaintiff was evaluated by Dr. Sarfraz Zaidi from August 25, 2009 through October 7, 2009, due to a one year history of palpitations, chest pain, and dyspnea. Stress test reportedly showed a small area of defect in the anteroseptal region both at rest and on exertion, slightly reversible. Additional problems noted include nausea, swelling of the feet, hypertension, dyspilidemia, tobacco abuse, reflux, joint pain, myalgia, and obesity. Holter event monitor recorded five symptomatic events consisting of flutter, rapid heartbeat, and right sided pain, all correlating with sinus rhythm to mild sinus tachycardia. EKG-gated CT scanning yielded the following conclusion: 1) Mildly abnormal calcium score of 25.76 (99th percentile), two-vessel calcific coronary atherosclerosis, 2) Two-vessel calcific atherosclerosis, 3) Assuming asymptomatic status, the findings are suggestive of low short and intermediate term cardiovascular prognosis risk with somewhat higher long term risk, and 4) Vigorous risk factor modification is

2

indicated (Tr. 207-216).

Plaintiff underwent consultative exam by Dr. Krish Purswani on October 12, 2009. Presenting problems included bilateral knee pain and stiffness, right ankle pain, bilateral forearm pain, numbness in the arms and right hand, bilateral hip pain, shortness of breath, thyroid cyst, and chest pain. Exam was remarkable for obesity, mild crepitus in both knees, elevated blood pressure, and failed tandem gait. The assessment was bilateral knee pain; right ankle pain; bilateral forearm pain; bilateral sporadic hip pain; shortness of breath, untreated; thyroid cyst; chest pain, possibly mild angina; abnormal MPI; severe obesity (BMI 38.310); hypertension, inadequately controlled; and tobacco abuse. Lumbar spine x-rays showed mild narrowing of L3-L4 and L5-S1 and mild calcification of the aorta; right knee x-rays showed mild narrowing posteriorly between the distal femur and proximal tibia; and right ankle x-rays showed mild arthritic changes at the base of the talus and calcaneus. In the body of his report, Dr. Purswani opined Plaintiff can frequently lift 30 pounds ½ of the time in an eight-hour day from the floor; can stand for six hours per day and walk for six hours per day, for a total of six hours in an eight-hour day; and can sit for eight hours in an eight-hour day (Tr. 217-222).

In the attached assessment form, Dr. Purswani opined Plaintiff can never lift/carry 51 pounds or more or be exposed to unprotected heights; can frequently lift/carry 21 to 50 pounds; can continuously lift/carry up to 20 pounds; can sit for a total of eight hours in an eight-hour workday, three hours without interruption; can stand for a total of six hours in an eight-hour workday, two hours without interruption; can walk for a total of six hours in an eight-hour workday, 30 minutes without interruption; can frequently (1/3 to 2/3) reach, handle, finger, feel, push/pull, and operate foot controls bilaterally; can frequently climb, balance, stoop, kneel, crouch, crawl, operate a motor vehicle, and be exposed to humidity and wetness, extreme cold, extreme heat, vibrations, and dusts, odors, fumes, and pulmonary irritants; and can occasionally (up to 1/3) be exposed to moving mechanical parts (Tr. 223-228).

On November 5, 2009, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; is limited to frequent handling, fingering, and reaching in all directions, including overhead, bilaterally; should avoid concentrated exposure to extreme cold, extreme heat, hazards (machinery, heights, etc.), and fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 229-237).

Plaintiff received treatment at Twin City Medical Center from January 23, 2008 through March 18, 2010. Conditions and complaints addressed include right knee pain, right ankle pain and giving out, sleep disturbance secondary to right knee pain, obesity, palpitations, thyroid cyst, tobacco use disorder, bronchitis, hoarseness, hypertension, seasonal allergic rhinitis, dysphagia, upper respiratory infections, GERD, pharyngitis, sinusitis, hyperlipidemia, chest pain, bronchitis, abdominal pain, hypercholesterolemia, fatigue, vitamin D deficiency, low back pain, and left hip pain. Exams were remarkable for obesity, tenderness in the right knee, tenderness in the right ankle, fatigued appearance, tenderness in the left SI area of the back, crepitus in both knees, and tenderness in the lumbar region of the back (Tr. 238-299). On September 10, 2009, right

3

knee x-rays showed mild patellofemoral osteoarthritis (Tr. 297). On September 21, 2009, sonogram showed complex and cystic nodules in the thyroid gland (Tr. 294).

On June 10, 2010, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, and crawl; can frequently kneel and crouch; and should avoid concentrated exposure to extreme cold and extreme heat (Tr. 323-331).

Plaintiff has received treatment and testing at Bristol Regional Medical Center (Tr. 332-484). Plaintiff received Emergency Room treatment on four occasions from January 12, 2007 through November 15, 2007, due to a fall resulting in injury to the right knee and right wrist, bronchitis, sinusitis, left hip pain, and left foot and left hand contusions (Tr. 446-484). Plaintiff was seen seven times from September 15, 2008 through August 9, 2009, due to left flank pain, right ankle sprain, rash, neck pain, chest pain, nausea and vomiting, right upper quadrant pain, abdominal pain, and ovarian cyst (Tr. 332, 340-441). Plaintiff underwent testing on July 14, 2010. MRI of the lumbar spine showed mild bulges with degenerative disease at L3-L4 and L4-L5 and severe facet arthrosis at L4-L5 causing moderate to severe foraminal stenosis on the left at L4-L5. Right knee MRI showed small joint line osteophytes, mild degenerative chondral changes, and small effusion. Left knee MRI showed nonspecific joint effusion with prepatellar soft tissue edema (Tr. 333-337).

Plaintiff continued treatment at Twin City Medical Center from July 8, 2010 through November 10, 2010, during which time she was suffering low back pain secondary to degenerative disc disease and lumbar stenosis, bilateral knee pain, right wrist pain and numbness, obesity, muscle spasms, fatigue, GERD, hypertension vitamin D deficiency, hyperglycemia, leukocytosis, tobacco use disorder, and hyperlipidemia. Exams were remarkable for tenderness over the left lumbar area and buttocks, decreased deep tendon reflexes in the left patella, right anterior knee edema, and crepitus in both knees (Tr. 488-511).

Dr. Michael R. Fleenor examined Plaintiff on February 12, 2007, after she slipped on ice and injured her right knee. X-rays were noted to show mild degenerative change and peripheral spurring. The assessment was resolving contusion to the right knee with pain from inappropriate immobilization at night (Tr. 512).

Dr. Fred R. Knickerbocker examined Plaintiff on November 12, 2010, for evaluation of pain in the lower back, mainly on the left side, radiating down into the left thigh at times. Exam was remarkable for tenderness over the left sacro-iliac region, restricted range of motion, and hypoactive reflexes to the legs. MRI was reviewed and noted to show evidence of degenerative disc disease at L3-L4, L4-L5, and L5-S1; bulging of the discs at the L3-4 and L4-5 levels; and significant degenerative changes at the L4-5 level causing moderate to severe foraminal stenosis on the left. Dr. Knickerbocker felt this may very well be the etiology of the pain Plaintiff describes. Dr. Knickerbocker gave Plaintiff a prescription for Med-Rol Dosepak and wanted to check her again in one week to consider possible injection. Unfortunately, Plaintiff had to cancel the follow-up appointment due to not having the money to pay for it (Tr. 513).

4

[Doc. 11, pgs. 2-6].

At the administrative hearing, after listening to the testimony of the plaintiff, the ALJ took the testimony of Dr. Robert Spangler, a vocational expert ["VE"]. He asked Dr. Spangler to assume a person of plaintiff's age, education and work history. He then asked him to assume she was restricted to light work, but would need a job that would allow her to sit or stand at her option. He identified jobs of food preparation, production machine tender, dishwasher, light janitorial, light maids, non-farm animal care, assembler and hand packer. He testified that there were 10,483,000 jobs in the national economy, which would be reduced by 80% with the sit/stand option, and 199,739 regional jobs. This would come to 2,096,600 jobs in the nation and 39,947 at the light level with the sit/stand option. He also said that there were thousands of cashier and light maid jobs in the region within the functional capacity contained in the hypothetical. If plaintiff could not concentrate and persist at work tasks, there would be no jobs which she could perform. (Tr. 49-50).

In his hearing decision, the ALJ stated that the plaintiff had the residual functional capacity ["RFC"] for the full range of light work provided sh had the option to sit or stand (Tr. 21). He then reviewed and discussed all of the medical evidence, including the findings of Dr. Knickerbocker (Tr. 21), Consultative examiner Dr. Krish Purswani (Tr. 24), and the State Agency non-examining physicians Drs. Gregory and Mather (Tr. 24-25). Regarding Dr. Purswani, the ALJ indicated by his discussion of Dr. Purswani's opinion that he was aware of all details of the report, including "environmental limitations," obviously referencing Dr. Purswani's opinion that the plaintiff could never be around unprotected heights and only occasionally (up to 1/3rd of a workday) around moving mechanical parts

5

(Tr. 226). The VE gave great weight to Dr. Purswani's opinion because it was "based on an examination source and is consistent with other medical evidence of record." The ALJ then pointed out that his RFC finding was more restrictive in that he limited the plaintiff to the lifting capabilities of light work rather than the greater lifting capacity opined by Dr. Purswani (Tr. 24). With regards to the State Agency physicians, the ALJ noted all of their opined limitations. He gave the assessments great weight, and pointed out that they were "generally consistent" with his RFC finding for a limited range of light work, but noted that these doctors did not review recent medical evidence and hear testimony, which the ALJ did (Tr. 25).

Based upon the testimony of Dr. Spangler, the ALJ found that there were a significant number of jobs which the plaintiff could perform in the regional and national economies. Accordingly, he found that she was not disabled (Tr. 25-26).

Plaintiff asserts that the ALJ did not include all of the impairments noted by Purswani and the State Agency doctors, and failed to explain why he did not. She argues that evidence submitted after the State Agency doctors submitted their reports might have changed their opinions. She states that the ALJ did not properly consider the effect the plaintiff's obesity would have had on her ability to do these jobs. Finally, she submits that the ALJ did not properly consider the subjective complaints of disabling pain.

With respect to the failure of the ALJ to include all limitations suggested by Dr. Purswani, plaintiff states "the physical RFC reasoned to deny Plaintiff's claim was not formulated by a physician, but by the ALJ. The ALJ is simply not qualified to make a medical judgment about how Plaintiff's mental *[sic]* impairments would or would not affect

6

her ability to work without some expert medical testimony or other medical evidence to support his decision." [Doc. 11, pg. 10]. On the contrary, while treating, examining and non-examining sources may opine on the components that make up a claimant's residual functional capacity, the finding of the RFC is an issue reserved completely to the Commissioner. *See, SSR 96-5p*, 1996 WL 374183. "A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment." *Id.*, pg 4. The opinion of the ALJ on RFC is not a medical opinion, but is an opinion on an issue reserved to the Commissioner. 20 CFR § 416.927(e). It has been held that it is not reversible error for an ALJ to fail to address his reasons for excluding some portions of a physicians opinions from his findings. *See, Kornecky v. Commissioner of Soc. Sec.,* 2006 WL 305648, at 9-11 (6th Cir. 2006), and *Dykes ex rel. Brymer v. Barnhart*, 2004 WL 2297874, at 3-5 (6th Cir. 2004). This is especially true when dealing with the opinions of non-treating physicians.

In any event, the VE identified thousands of light maid and cashier jobs in the region alone, neither of which would seem to involve working at unprotected heights or for over 1/3rd of a workday around moving mechanical machinery. In fact, of all the jobs named, only those of production machine tender and assembler even remotely suggest that they would be unavailable if Dr. Purswani's environmental restrictions were included in the RFC.

The Court finds that the ALJ did not play doctor, but fulfilled his role and responsibility as finder of fact. Dr. Purswani's opinion provides substantial evidence for his

7

RFC finding, and any perceived failure to properly discuss his environmental restrictions is, at best, harmless error.

It is true that Dr. Knickerbocker's report was not before Dr. Purswani or the State Agency physicians. It is a rare case indeed that all records have been submitted by a particular plaintiff before that part of the process takes place. In any event, the ALJ considered and discussed the findings and opinions of Dr. Knickerbocker, and obviously did not change his opinion regarding the plaintiff's RFC. There comes a point when cases must be decided. The ALJ provided a requested extension to submit this additional evidence for his consideration. However, he was not required to send the case back to the State Agency physicians for further review. As the trier of fact, he could analyze this evidence and determine whether it changed his RFC opinion.

With respect to her obesity, plaintiff was obese when examined by Dr. Purswani. In his opinion, she was less restricted exertionally than was ultimately found by the ALJ. Plaintiff has failed to show in any fashion that her obesity was a severe impairment or significantly affected her ability to perform job-related activities.

Regarding the plaintiff's credibility, the ALJ observed and listened to the plaintiff's testimony. He thoroughly discussed the objective evidence. Based upon all of the evidence he determined that the plaintiff was not entirely credible regarding her subjective complaints. He is the trier of fact and adequately explained his reasons. It is noted that the plaintiff made many of these complaints to Dr. Purswani when he examined he, and he opined that she was capable of greater exertional activity than the ALJ. There is no error regarding this finding.

The Court finds that the ALJ did not commit any reversible error. There was

substantial evidence to support his RFC finding and the question to the VE. It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[1]

Respectfully submitted,

  s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).